1  CENTER FOR DISABILITY ACCESS
   Mark Potter, Esq., SBN 166317
2  Phyl Grace, Esq. SBN 171771
   Mail: PO Box 262490
3      San Diego, CA 92196-2490
   Delivery: 9845 Erma Road, Suite 300
4      San Diego, CA 92131
   (858) 375-7385; (888) 422-5191 fax
5  phylg@potterhandy.com
       Attorneys for Plaintiff
6

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11

12 **Cecil Shaw**,                    **Case No**. 5:15-CV-00134-SVW-KKX

           Plaintiff,            **Plaintiff's Memorandum of Points**
13                               **and Authorities in Support for his**
    v.                           **Motion for An Award of Attorney's**
14                               **Fees**

15 **Dore A. Reyes**,                Date:    October 19, 2015
                                  Time:    1:30 p.m.
16         Defendant.             Ctrm:    6

17                               Honorable Judge Stephen V. Wilson

18

19

20

21

22

23

24

25

26

27

28

_____

Memo of PNA for Fee Motion                    5:15-CV-00134-SVW-KKX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................i

TABLE OF AUTHORITIES...........................................................ii

I.   PRELIMINARY STATEMENT ...............................................1

II.  HISTORY OF SETTLEMENT NEGOTIATIONS ....................1

III. REASONABLENESS OF FEES .................................................2

    A.  Hourly Rates ......................................................................4

    B.  Hours Reasonably Expended .............................................7

IV. HENSLEY FACTORS .................................................................9

    A.  Time and Labor Required ..................................................9

    B.  Novelty and Difficulty of the Issues .................................9

    C.  Skill Required to Perform Legal Service ..........................9

    D.  Preclusion of Other Work ............................................... 11

    E.  Customary Fee ................................................................. 11

    F.  Fixed or Contingent Fee .................................................. 11

    G.  Time Limitations ............................................................. 11

    H.  Amount Involved and Results Obtained ......................... 12

    I.  Experience and Ability of Attorneys .............................. 13

    J.  Undesirability of the Case ............................................... 13

    K.  Nature and Length of Professional Relationship with Client..... 13

    L.  Awards in Similar Cases. ................................................ 13

V.  LITIGATION COSTS .............................................................. 13

VI. CONCLUSION ......................................................................... 14

i

# TABLE OF AUTHORITIES

**Cases**

*Blackwell v. Foley*,
  724 F. Supp. 2d 1068 (N.D. Cal. 2010) ............................................. 3, 7

*Boemio v. Love's Restaurant*,
  954 F.Supp. 204 (S.D. Cal. 1997) ..................................................... 12

*City of Sacramento v. Drew*,
  207 Cal. App. 3d 1287 (1989) ............................................................ 3

*Copeland v. Marshall*,
  641 F.2d 880 (1980) .......................................................................... 8

*Hansen v. Deercreek Plaza, LLC*,
  420 F.Supp.2d 1346 (S.D.Fla 2006) ............................................... 6, 7

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ................................................................ 2, 3, 4, 8

*Jankey v. Poop Deck*,
  537 F.3d 1122 (9th Cir. 2008) ............................................................ 3

*Koire v. Metro Car Wash*,
  40 Cal.3d 24 (1985) ......................................................................... 12

*Lindy Bros. Builders, Inc. of Phila. v. American Radiator*,
  487 F.2d 161 (3rd Cir 1973) .............................................................. 8

*Lovell v. Chandler*
  (9th Cir. 2002) 303 F.3d 1039 ......................................................... 14

*Margolin v. Regional Planning Comm'n*,
  134 Cal.App.3d 999 (1982) ................................................................ 6

*PLCM Group, Inc. v. Drexler*,
  22 Cal.4th 1084 (2000) ...................................................................... 4

*San Bernardino Valley Audubon Society, Inc. v. County of San*
  *Bernardino,*
  155 Cal.App.3d 738 (1984)........................................................3
*Serrano v. Priest,*
  20 Cal.3d 25 (1977) ..............................................................8
*United Steelworkers of Am. v. Phelps Dodge Corp.,*
  896 F.2d 403 (9th Cir. 1990) ..................................................6
*Van Gerwen v. Guarantee Mutual Life,*
  214 F.3d 1041 (9th Cir. 2000) ...............................................9
*Wehr v. Burroughs Corp.,*
  477 F.Supp. 1012 (E.D.Pa. 1979) ...........................................3
*Welch v. Metropolitan Life Ins. Co.,*
  480 F.3d 942 (9th Cir. 2007) ..................................................4
*Woodland Hills Residents Ass'n., Inc. v. City Council,*
  23 Cal.3d 917 (1979)..............................................................3

**Statutes**

42 U.S.C. § 12205 ................................................................ 2, 13
Cal. Civ. § 52(a) .................................................................. 2, 12

Memo of PNA for Fee Motion                    5:15-CV-00134-SVW-KKX

## I.  PRELIMINARY STATEMENT

Mr. Shaw is a person with a disability. He sued Defendant Reyes for failing to provide *any* accessible parking spaces although he provided a parking lot and parking spaces to his customers and although the law has required it for 25 years. He also sued the defendant for failing to provide accessible dining tables and restrooms. During the course of the lawsuit, Defendant Reyes expended $30,000 in removing barriers and complying with the Americans with Disabilities Act. Ultimately, the parties settled the case with the defendant agreeing to some further remedial relief, agreeing to pay $3,000 in damages, and agreeing to pay the plaintiff's reasonable attorney's fees and costs. See Exhibit 3 (Settlement Agreement). The plaintiff now moves the Court for an award of attorney's fees and costs.

## II.  HISTORY OF SETTLEMENT NEGOTIATIONS

The first written[1] offer of settlement from the defense was for a *total* of $1,500. Exhibit 4 (Defense Letter dated 5-6-15). The plaintiff's attorney's fees and costs at that point were $7,780. Exhibit 2 (Billing). The plaintiff promptly responded with a demand for $13,500 which covered the damages, attorney's fees and costs. Exhibit 5 (Grace Email dated 5-18-15). The defense did not respond or counter.

Six weeks later, plaintiff's counsel emailed defense counsel asking for a counter and also making an alternative proposal that the parties settle the damages at $3,000 and then agree to submit the amount of

---

[1] Because plaintiff's counsel's experience is that memories of oral conversations about offers/demands are typically questionable, he always puts is offers in writing and will only refer to the written exchanges in this case.

Memo of PNA for Fee Motion                    5:15-CV-00134-SVW-KKX

reasonable fees and costs to the Court by way of motion. Exhibit 6 (Potter Email dated 6-28-15). It was a fair offer and one the parties ultimately settled on. But it took a few weeks. The defense first countered with a *total* of $4,500. Exhibit 7 (Defense Letter dated 7-6-15). Plaintiff's counsel reiterated the demand for $3,000 and submit. Exhibit 8 (Grace Email dated 7-7-15). Defense counsel then offered $2,500 and to submit and plaintiff stuck with the $3,000 and submission. Exhibit 9 (Email Exchanges dated 7-8-15).

Trying to settle the fees, the defense offered $4,000 in fees and the plaintiff counter with a very fair demand of only $6,500. Exhibit 10 (Email Exchange dated 7-14-15). The defense informed the plaintiff that it would get a response but did not counter. After two months, the plaintiff emailed the defense again asking for a counter. Exhibit 11 (Grace Email dated 9-8-15). The defense never countered. The plaintiff's demands in this case were fair. The defense offers were not.

### III.   REASONABLENESS OF FEES

Under the American with Disabilities Act, attorney's fees are available to a prevailing party. 42 U.S.C. § 12205. Additionally, under the Unruh Civil Rights Act, a defendant "is liable for" any attorney fees suffered by any person denied the rights provided for under Unruh. Cal. Civ. § 52(a). Successful litigants are entitled to reasonable attorney fees "to ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Consequently, recovery is the rule rather than the exception." *Jankey v.*

*Poop Deck*, 537 F.3d 1122, 1131 (9th Cir. 2008) (internal citations omitted). Perhaps more importantly, the defendant agreed to pay the reasonable attorney's fees and costs. Exhibit 3 (Settlement Agreement).

This is a civil right entitlement, not a windfall. "It must be remembered that an award of attorneys' fees is not a gift. It is just compensation for expenses actually incurred in vindicating a public right." *City of Sacramento v. Drew*, 207 Cal. App. 3d 1287, 1304 (1989). The "fundamental objective" of attorney fee statutes is "to encourage suits effectuating a strong policy by awarding **substantial attorney's fees** ... to those who successfully bring such suits . . .." *Woodland Hills Residents Ass'n., Inc. v. City Council*, 23 Cal.3d 917, 933 (1979) (emphasis added). To accomplish this, the award must be large enough "to entice competent counsel to undertake difficult public interest cases." *San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino*, 155 Cal.App.3d 738, 755 (1984). Thus, there is a "requirement of an award of substantial attorney fees" in these disability access civil rights cases. *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1076 (N.D. Cal. 2010) (a disability access case involving both the ADA and Unruh Civil Rights Act).

The documentation submitted in support of a request for attorney fees should be sufficient to satisfy the court, or indeed a client, that the hours expended were actual, non-duplicative and reasonable and to appraise the court of the nature of the activity and the claim on which the hours were spent. *Hensley*, 461 U.S. at 437; *Wehr v. Burroughs Corp.*, 477 F.Supp. 1012, 1016–18 (E.D.Pa. 1979), *modified on other grounds* at *Wehr v. Burroughs Corp.*, 619 F.2d 276 (3rd Cir. 1980). The billing statements attached as exhibit 2 meet this standard.

## A.        Hourly Rates

A reasonable hourly rate reflects the skill and experience of the lawyer, including any relevant areas of particular expertise, and the nature of the work performed. *See Hensley*, 461 U.S. at 433-34. The reasonable market value of the attorney's services is the measure of a reasonable hourly rate. *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1094 (2000). This standard applies regardless of whether the attorneys claiming fees charge nothing for their services, charge at below-market or discounted rates, represented the client on a straight contingent fee basis, or are in house counsel. *Id.*; *see also Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

In this case, Mr. Potter charged $425 per hour, Ms. Grace charged $350, and Mr. Price and Ms. Lockhart charged $250. The hourly rates sought in this case are fair and reasonable.

Mark Potter founded the Center for Disability Access, has devoted more than 95% of his practice to disability issues for almost 20 years. He was a former officer of the California's for Disability Rights, Chapter Number One—the oldest and most prestigious disability civil rights advocacy organization in California, as well as a board member of the prestigious Southern California Rehabilitation Services. He has given ADA seminars throughout the state of California and published in numerous disabled rights periodicals. He has litigated over 2,000 disability cases. His expertise and experience with ADA cases is almost unparalleled in California. He has been interviewed on CNN as an ADA legal expert.

Phyl Grace has been practicing for twenty years. She has focused exclusively on disability access litigation for the last nine years. She has

Memo of PNA for Fee Motion                          5:15-CV-00134-SVW-KKX

1   handled trials, taken depositions, drafted motions, and otherwise
2   litigated these civil rights cases exclusively for seven years.

3       Attorney Dennis Price is qualified to bill at $250 per hour. He
4   graduated from Loyola Law School in 2011. While in law school he
5   participated in the Moot Court Honors Board and competed on the
6   Loyola Appellate National Team. He spent a year clerking for the
7   California Court of Appeal. Since passing the bar he worked for a
8   renowned public interest firm representing Los Angeles County senior
9   citizens in a wide-range of legal issues before coming to the Center for
10  Disability Access. He has written and argued cases before the California
11  Court of Appeal and participated in prosecuting well over a hundred ADA
12  cases in state and federals courts with responsibilities ranging from
13  conducting depositions, settlement negotiations, drafting and arguing
14  motions and seeing multiple cases through trial.

15      Attorney Amanda Lockhart is qualified to bill at $250 per hour.
16  Ms. Lockhart graduated from California Western School of Law in 2011.
17  While in law school, Ms. Lockhart served as an elected member of the
18  Student Bar Association and as a staff writer for the school's newspaper,
19  The Commentary. Ms. Lockhart excelled at oral advocacy, earning the
20  title of 'Distinguished Advocate' for her appellate oral advocacy skills.
21  She also earned an 'Am Jur' award in the invitation-only Advanced
22  Appellate Skills class. Ms. Lockhart has clerked for a celebrated private
23  firm, handling matters including a multi-state elder abuse case as well as
24  a case involving novel theories of fraud and negligence as they relate to
25  international surrogacy agreements. Ms. Lockhart also served as a
26  student liaison for the Dean of Admissions.

27      Plaintiff's attorneys' disability rights work has helped to shape ADA
28  law with numerous, precedent setting opinions including, but not limited

to the following published cases: *Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014); *Cortez v. City of Porterville*, 5 F.Supp.3rd 1160 (E.D. Cal. 2014); *Johnson v. Wayside Prop., Inc.*, 41 F.Supp.2d 973 (E.D. Cal. 2014); *Daubert v. City of Lindsay*, 37 F.Supp.2d 1168 (E.D. Cal. 2014); *Munson v. Del Taco, Inc.*, 46 Cal.4th 66 (2009); *Nicholls v. Holiday Panay Marina, L.P.*, 93 Cal.Rptr.3d 309 (2009); *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp. 2d 1159 (S.D. Cal. 2009); *Kittok v. Leslie's Poolmart, Inc.*, 687 F. Supp. 2d 953 (C.D. Cal. 2009); *Deanda v. Sav. Inv., Inc.*, 267 F. App'x 675, 676 (9th Cir. 2008); *Miller v. California Speedway Corp.* (9th Cir. 2008) 536 F.3d 1010; *Munson v. Del Taco, Inc.*, 522 F.3d 997 (9th Cir. 2008); *Grove v. De La Cruz*, 407 F. Supp. 2d 1126 (C.D. Cal. 2005); *Fortyune v. American Multi-Cinema, Inc.*, 364 F.3d 1075 (9th Cir. 2004); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133 (9th Cir. 2002); *Wyatt v. Ralphs Grocery Co.*, 65 Fed.Appx. 589 (9th Cir. 2003); *Botosan v. Paul McNally Realty*, 216 F.3d 827 (9th Cir. 2000); *Wyatt v. Liljenquist*, 96 F. Supp. 2d 1062 (C.D. Cal. 2000).

Rates awarded to the claiming attorneys in previous actions are good evidence of the appropriate market rate. (*See e.g. Margolin v. Regional Planning Comm'n*, 134 Cal.App.3d 999, 1005 (1982) [where the court rejected defendants' argument that rates awarded plaintiff's counsel in prior litigation were not relevant, stating that court awards are "obviously relevant" and that the "most analogous evidence" would be fees sought and deemed reasonable by courts in other cases."]). Also, in *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990), the court held, "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."). In *Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1350 (S.D.Fla 2006), the court held that previous fee

rulings for the fee applicant for comparable cases is "satisfactory evidence" in an ADA case.

This Court has previously and recently found Mr. Potter and Ms. Grace's hourly rates fair and reasonable. Exhibit 12 and Exhibit 13. Not only are plaintiff's counsel's rates fully consistent within their market but they should expect to receive full compensation. Both state and federal law advocates for full and substantial compensation for disability civil rights attorneys:

> Per statutory provisions by the United States Congress and the California Legislature to ensure that there are attorneys willing to perform the important function of securing the rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," it is necessary to provide substantial compensation for this work. Encouraging competent attorneys to handle ADA Title III cases is necessary for effective enforcement: former California Attorney General Dan Lungren, in a 1993 Opinion, held that California building officials could not independently enforce the ADA, and that enforcement was left primarily to private lawsuits.

*Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010). "Indeed, were it not for the efforts of those attorneys willing to undertake the representation of ADA plaintiffs, there would be little, if any, enforcement of this landmark statute." *Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1349  (S.D.Fla. 2006).

### B.     Hours Reasonably Expended

As the first step in the calculation of an equitable award, the Court should determine the number of hours reasonably expended in this litigation: The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorneys, must be a calculation of the attorneys' services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only

approach that can claim objectivity, a claim which is 'obviously vital' to the prestige of the bar and the courts." *Serrano v. Priest*, 20 Cal.3d 25, 49 (1977), *citing Lindy Bros. Builders, Inc. of Phila. v. American Radiator*, 487 F.2d 161 (3rd Cir 1973).

Furthermore, only hours found to have been reasonably expended may be allowed. Plaintiff is not entitled to an award of attorney's fees for hours which were duplicative, unproductive, excessive or otherwise unnecessary. *Hensley*, 461 U.S. at 434. A fee applicant must exercise "billing judgment" in the preparation of the attorney's fee application; '[h]ours not properly billed to one's client are not properly billed to one's adversary pursuant to statutory authority." *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (*en banc*), *quoted* in *Hensley*, 461 U.S. at 484. A fair award is the product of reasonable hours and reasonable rates, and represents an objective basis for an initial determination of attorney's fees.

The case has seen a decent amount of work. The case has reasonably and necessarily involved pre-filing investigation, complaint drafting, emails, letters, phone conversations, settlement conference briefs, a court hearing, discovery, this motion and other trappings of a fully litigated case. Plaintiff's attorneys have expended about 27 hours to date and will likely expend another 11 hours in bringing this case to a conclusion when this fee motion is argued. As is obvious from the billing statement (exhibit 2), there has been no overbilling in this case. All of the hours submitted to the court in the accompanying declaration of Mark Potter and the attached billing were reasonably incurred in the prosecution of this case.

Memo of PNA for Fee Motion                              5:15-CV-00134-SVW-KKX

## IV.   HENSLEY FACTORS

In *Hensley,* the Supreme Court stated that the lodestar is the "presumptively reasonable fee amount" and that the Court can adjust upward or downward by a multiplier in "rare" or "exceptional" cases only. *Id.* at 433; *Van Gerwen v. Guarantee Mutual Life*, 214 F.3d 1041, 1045 (9th Cir. 2000); *see also Welch*, 480 F.3d at 946. Additionally, the *Hensley* court outlined twelve factors that a Court may consider when determining the appropriate fee award or any departure from it. Many of the factors are already subsumed into the lodestar discussion but plaintiff will briefly discuss each factor.  Plaintiff seeks no modification of the lodestar.

### A.      Time and Labor Required

As stated above, the plaintiff showed billing judgment and restraint. The case was not over litigated. The plaintiff seeks no multiplier as the time expended will be compensated by the lodestar.

### B.      Novelty and Difficulty of the Issues

The Americans with Disabilities Act itself and its interaction with California State Law is ever evolving and involves new issues and new challenges on a constant basis. Aside from the rapidly expanding and somewhat complex area of Americans with Disabilities Act work in general, this case presented no significant legal issues of first impression and plaintiff seeks no multiplier based on this issue.

### C.      Skill Required to Perform Legal Service

The Americans with Disabilities Act was passed in 1990 and the Unruh Civil Rights Act was amended in 1992 to incorporate the ADA.

9

There are only a handful of attorneys with expertise in the area. Access under Title III of the Americans with Disabilities Act is predicated upon requirements to provide access to existing public accommodations, new construction and alterations to existing buildings. Those requirements in existing public accommodations turn on whether the removal of architectural barriers is "readily achievable."  In turn, there is a plethora of federal regulations, Department of Justice advisory opinions, interpretive manuals and case law that is argued by both plaintiffs and defendants as to what constitutes architectural barriers and the extent of the remedial measures necessary, if any, to remove the architectural barrier. Furthermore, there is the overlaying application of Title 24 of the California Code of Regulations requirements to public accommodations which were constructed or altered after 1982, and the American National Standards Institute (ANSI) between 1970 and 1982.

A successful prosecution of disability access cases is dependent upon a plaintiff's attorney having a thorough knowledge of the ADA and all its implementing regulations, Americans With Disabilities Act Accessibility Guidelines, Title 24 of the California Code of Regulations, ANSI standards, and the relevant sections for the California Health and Safety Code, the California Civil Code, and the California Government Code. In addition, an intimacy with the body of case law which has developed around the ADA (among which over two dozen published decisions were handled by plaintiff's counsel's office) and state statutory schemes, and the ability to couple this knowledge with a practical, strategic approach to interfacing with defendants, their own personal counsel, insurance defense attorneys, insurance carriers and the Court is absolutely essential.

In short, handling disability access cases demand the services of an attorney trained and specializing in the area of law.  This case did not present specialized or skillful challenges and was a fairly straight-forward application of the law.

### D.     Preclusion of Other Work

Plaintiff's attorneys have spent more than 25 hours prosecuting this case. That time could not be used, simultaneously, for other cases or other clients.  Thus, the work on this case precluded other work that could have and would have been done and billed for. Nonetheless, the lodestar fully compensates for that work.

### E.     Customary Fee

As covered above, the rates and fees charged by plaintiff's counsel are market rates.

### F.     Fixed or Contingent Fee

As is the case with virtually all civil rights cases, the fees in this case were contingent upon prevailing. Had the plaintiff not prevailed, the plaintiff's attorneys would not be able to recover monies to compensate them for the outlay of time spent in prosecuting this case.  Nonetheless, plaintiff's counsel is not seeking a multiplier.

### G.     Time Limitations

There were no unique time limitations imposed by either the client or the circumstances.

---

Memo of PNA for Fee Motion                          5:15-CV-00134-SVW-KKX

### H.        Amount Involved and Results Obtained

Under the Americans with Disabilities Act, there are no damages available. The only remedy is injunctive relief. Plaintiff informally obtained the remedial relief because the defendant remedied the violations. Additionally, under his Unruh Civil Rights Act cause of action, the plaintiff was entitled to damages. Cal. Civ. § 52(a).  It's difficult to measure the "damage" caused by denial of access.  Thus, the Unruh Civil Rights Act has a minimum that a defendant must pay.  In an Unruh case before the California Supreme Court, the defendant violated the law but argued that it had "not harmed a single hair on the plaintiff's head or subjected him to the slightest deprivation or embarrassment of any kind." *Koire v. Metro Car Wash*, 40 Cal.3d 24, 33 (1985). The Court stated, "by passing the Unruh Act, the Legislature established that arbitrary sex discrimination by businesses is per se injurious. Section 51 provides that all patrons are entitled to equal treatment. Section 52 provides for minimum statutory damages of $250 [previous minimum] for every violation of section 51, regardless of the plaintiff's actual damages." *Id*. at 33. The minimum damage award that was in effect for the plaintiff's case was $4,000. Courts just don't award that much money for violations that do not involve impact injury. For example, in one of the only published decision to actually identify a damage award: *Boemio v. Love's Restaurant*, 954 F.Supp. 204 (S.D. Cal. 1997), the court held a bench trial, found for the plaintiff, and awarded $1,000 (the minimum) although the plaintiff had to urinate in the parking lot. This case was no different from other access denial cases with respect to damages. It simply never involved large sums of money. The $3,000 damage settlement and the remedial relief obtained during the case, means that the plaintiff recovered virtually 100% of what he could recover.

Memo of PNA for Fee Motion                          5:15-CV-00134-SVW-KKX

**I.     Experience and Ability of Attorneys**

See discussion under "Hourly Rates" above.

**J.     Undesirability of the Case**

This case, like many small dollar civil rights cases, is low on the desirability scale.  The clientele is largely (as in the present case) very low income or indigent. Payment is completely dependent upon winning. It is usually big business and insurance companies on the other side.

**K.     Nature and Length of Professional Relationship with Client**

The Center for Disability Access has no relationship with Mr. Shaw other than in representing him in his ADA/Unruh claim.

**L.     Awards in Similar Cases.**

This matter is discussed above.

**V.   LITIGATION COSTS**

The plaintiff seeks to recover the $400 filing fee, the $20 service costs and the $200 for the cost of his investigator. Although the investigation cost is not a recoverable cost under the traditional cost bill, it is recoverable in an ADA case. Section 505 of the Americans with Disabilities Act (42 U.S.C. § 12205) authorizes reasonable attorney's fees, including "litigation expenses and costs," in any action brought under the Act. This includes all costs normally associated with litigation including investigative costs:

> According to committee reports, Congress included the term "litigation expenses" in order to authorize a court to shift costs such as expert witness fees, travel expenses, and the preparation of exhibits. See H.R. Rpt. No. 101-485(III) at

13

73, reprinted in 1990 U.S.C.C.A.N. 445, 496 (Report of the Committee on the Judiciary) ("Litigation expenses include the costs of expert witnesses. This provision explicitly incorporates the phrase 'including litigation expenses' to respond to rulings of the Supreme Court that items such as expert witness fees, travel expenses, etc., be explicitly included if intended to be covered under an attorney's fee provision."); H.R. Rpt. No. 101-485(II) at 140, reprinted in 1990 U.S.C.C.A.N. 303, 423 (Report of the Committee on Education and Labor) ("Litigation expenses include the costs of experts and the preparation of exhibits.").

*Lovell v. Chandler,* 303 F.3d 1039, 1058 (9th Cir. 2002). "The federal statute, unlike the state statutes, explicitly provides for not only attorney's fees but also litigation expenses and costs." *Saldana-Neily v. Taco Bell of Am., Inc.,* 2008 WL 793872, *3 (N.D. Cal. 2008).

## VI.   CONCLUSION

The plaintiff respectfully requests that his motion be granted and he be awarded $15,405.


Dated: September 15, 2015          CENTER FOR DISABILITY ACCESS
                                     /s/ Mark Potter
               By:_____
                         Mark Potter, Esq.
                         Attorneys for Plaintiff